■ RONALD MOORE, Respondent-Appellant, v JOHN DORMIN, Appellant-Respondent. [676 NYS2d 90] —Order, Supreme Court, New York County (David Saxe, J.), entered August 1, 1997, which granted defendant's motion for summary judgment to the extent of dismissing the second and third causes of action, unanimously modified, on the law, to the extent of further granting the motion to dismiss the first cause of action for defamation, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

Rosenberger, J. P., and Williams, J., concur in a memorandum by Rosenberger, J. P., as follows: Summary judgment should be granted to the defendant. The facts are as set forth in Justice Tom's concurrence. As a prosecutor, the defendant is entitled to absolute immunity for his decision to pursue administrative remedies rather than starting criminal proceedings against one accused of perjury.

The fact that the assault case against the plaintiff was closed did not terminate the defendant's quasi-judicial role. Had the defendant decided to bring a second case against the plaintiff, this time for perjury, the defendant would unquestionably have been entitled to absolute immunity from civil suits based on his decision to prosecute (*Johnson v Town of Colonie,* 102 AD2d 925, 926). Naturally, absolute immunity also attaches to the decision not to prosecute (*Schloss v Bouse,* 876 F2d 287, 290 [2d Cir]), as well as to otherwise administrative acts that are intertwined with this prosecutorial decision (*supra,* at 291). If the prosecutor chooses to refer a suspected offender to an

administrative agency for a non-criminal disposition, this decision is immunized as well (*Davis v Grusemeyer*, 996 F2d 617, 630 [3d Cir]; *Brightful v Township of Haverford*, 1994 WL 114907, 3 [US Dist Ct, ED Pa, Apr. 5, 1994, Yohn, J.]), as even the plaintiff admits.

This case differs from cases in which the prosecutor was not given the benefit of immunity because he was acting outside the scope of the law (*see, e.g.*, *Rodrigues v City of New York*, 193 AD2d 79, 85 [no immunity for prosecutors who issued subpoenas to conduct their own investigation of plaintiffs before convening Grand Jury]). Here, the prosecutor was not gratuitously disparaging an ordinary citizen to the latter's employer. The agencies to which the defendant complained exist to monitor the fitness of police officers such as the plaintiff. If any civilian has immunity when making a complaint to the Internal Affairs Division or the Civilian Complaint Review Board (*see, e.g.*, *Campo v Rega*, 79 AD2d 626), a prosecutor should receive no less protection. In fact, because she or he will often need to rely on police officers as witnesses for the People, a prosecutor has a special interest in assuring the integrity of the police force.

As for qualified privilege, the plaintiff clearly did not raise a triable issue as to the defendant's motivation, under either the constitutional or the common-law definition of malice. Under the standard of *New York Times Co. v Sullivan* (376 US 254, 286), statements are made with malice when the speaker exhibits reckless disregard of whether or not they are false. Whether or not his interpretation of the inconsistencies in the plaintiff's Grand Jury and trial testimony was correct, this defendant was clearly not indifferent to the question of truth. Rather, he took great pains to substantiate his claims by comparing each of the plaintiff's apparently perjurious statements to other evidence in the record. Where it is evident that the speaker took care to provide a factual basis for his allegations, the fact that he felt strongly about the subject is simply irrelevant to the constitutional question of malice.

Similarly, although a finding of common-law malice simply requires spite or ill will, in the context of a defamation action, it is not enough that the defendant may have generally disliked the plaintiff. "If the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant *also* despised plaintiff. Thus, a triable issue is raised only if a jury could reasonably conclude that 'malice was the one and only cause for the publication' " (*Liberman v Gelstein*, 80 NY2d 429, 439 [citation omitted]). In *Liberman*, the landlord

sued a tenant for telling the board of governors of the tenants' association that the landlord bribed police officers and assaulted tenants (*supra,* at 433). On the issue of common-law malice, the Court of Appeals granted summary judgment to the defendant. The main deciding factor was that the tenant, rather than announcing his suspicions to the public at large, confidentially relayed them to a person who was in a position to investigate and with whom he shared a common interest (*supra,* at 439). As Justice Tom's concurrence recognizes, however reluctantly, the identical analysis applies to the case at bar.

We do not share our colleagues' dismay at the burden placed on potential plaintiffs by the Court of Appeals in *Liberman*. Given the importance of freedom of speech, especially on topics of public concern, the criteria for tort liability must be strict enough to avoid chilling the exercise of this right. The *Liberman* standard is hardly an insurmountable burden to defamation actions based on a common-law malice theory. Several cases have denied summary judgment to defendants based on that standard (*e.g., Herlihy v Metropolitan Museum of Art,* 214 AD2d 250, 260; *Rabushka v Marks,* 229 AD2d 899, 902). Nor does *Liberman* require the plaintiff to account at the outset for every possible legitimate motive for defendant's statements. As we recognized in *Herlihy* (*supra,* at 260), to defeat a motion for summary judgment, a plaintiff need only show that "if [defendant's] alleged statements were false, [defendant's statements] could well be determined, by a trier of fact, to have been made solely to harm plaintiff."

As plaintiff herein failed to meet this burden, summary judgment dismissing plaintiff's first cause of action should be granted, and that cause of action dismissed.

Wallach and Tom, JJ., concur in a memorandum by Tom, J., as follows: Plaintiff, a New York City police officer, was arrested and charged with assault as a result of an altercation with four teenage boys while he was off duty on March 17, 1992. The boys, during a school lunch break, were throwing items into the street when plaintiff drove by. Plaintiff contends that a 10-pound cobblestone hit and damaged his car while the boys later asserted that a piece of mattress stuffing hit the car. Plaintiff pursued and caught two of the boys. They later claimed that plaintiff had assaulted them while they were in detention, one receiving stitches for a head injury, and the other claiming that plaintiff had hit him in the mouth. Defendant in the present case was the Assistant District Attorney who presented the case to the 1992 Grand Jury that indicted

plaintiff, and who later prosecuted plaintiff at his March 1994 trial, which resulted in an acquittal. However, the relationship of the parties, now antagonists, did not end there.

By letter dated April 19, 1994, on District Attorney letterhead, defendant wrote to the Police Department's Deputy Commissioner for Internal Affairs, with a copy to the Civilian Complaint Review Board. That letter initially advised the Police Department of the prior month's acquittal, but then departed into a discussion of plaintiff's testimony at the Family Court proceeding arising from the boys' arrests and the subsequent Grand Jury proceeding that gave rise to the criminal charges against plaintiff. Defendant noted in the letter that the jury failed to find plaintiff guilty beyond a reasonable doubt, but offered his own view that plaintiff was guilty of assault and, further, that he was guilty of additional violations of law (generally perjury arising from plaintiff's sworn testimony), and of the Department's guidelines. The letter recited some of plaintiff's Grand Jury and Family Court testimony concerning the incident with the boys, which defendant characterized as being "replete with false statements," and, following a listing of "the officer's most egregious fabrications," then used additional trial evidence to point up the asserted falsity of the testimony. However, instead of simply offering the testimony side by side with the purportedly inconsistent evidence, defendant followed each item of testimony with the declaration that the testimony was false. Defendant also offered his belief that plaintiff, in filling out a line-of-duty report indicating that he injured his knee while arresting one of the boys, was trying to defraud the Police Department by converting an off-duty injury to an on-duty injury. However, defendant in the letter conceded that the District Attorney's office declined to further prosecute, but recommended that the Police Department "seek an appropriate remedy." Later in the letter, defendant left no doubt what remedy would be appropriate: plaintiff's "false statements * * * reveal him to be wholly unworthy to wear the uniform of a New York City Police Officer."

Plaintiff's June 1995 complaint against defendant asserted three causes of action sounding in defamation and constitutional violations arising under 42 USC § 1983. In the first cause of action, plaintiff alleged that the letter contained false, misleading and malicious statements about him, specifically by declaring that plaintiff had committed perjury. Plaintiff alleged that defendant, both as an individual and acting under color of his official position, falsely accused plaintiff of misconduct for the purpose of maligning him, destroying his reputation within

the Police Department and interfering with his continued employment with that Department. In the second and third causes of action, plaintiff alleged that defendant's disclosure, personally and under color of law, of the contents of sealed records for this purpose, violating plaintiff's statutory right of privacy conferred by CPL 160.50, implicated his right of privacy conferred by the State and Federal Constitutions in violation of 42 USC §§ 1983 and 1988.

Defendant moved pursuant to CPLR 3211 (a) (7) for dismissal on the ground that the complaint failed to state a cause of action, and sought summary judgment pursuant to CPLR 3212. Defendant raised the bar of absolute and qualified immunity based on his capacity as a prosecutor and the official context of the statements, arguing that the communication was made by one law-enforcement official to another concerning a common public interest. The IAS Court (David Saxe, J.), by order entered August 1, 1997, dismissed the second and third causes of action but denied dismissal of the defamation claim in the first cause of action. The parties have cross appealed. Under applicable Court of Appeals case law, we modify to dismiss the complaint in its entirety.

Initially, the court correctly dismissed the constitutional privacy claims, insofar as a violation of the sealing statute, CPL 160.50, " 'does not implicate constitutional considerations' " (*Matter of Charles Q. v Constantine*, 85 NY2d 571, 575, quoting *People v Patterson*, 78 NY2d 711, 716, and citing *United States v Jakobetz*, 955 F2d 786, 802, *cert denied* 506 US 834). To whatever extent *Anderson v City of New York* (611 F Supp 481) can be read for the proposition that CPL 160.50 creates a 42 USC § 1983 liberty interest in reputation or privacy, it has been superseded by *Constantine* and *Patterson* (*supra*), and its continued vitality has been questioned in Federal case law (*see, e.g., Griffin v Kelly*, 1994 US Dist LEXIS 153 [SD NY, Jan. 11, 1994, Sand, J.]) in light of these decisions. Plaintiff's belated attempt to amend the complaint to raise additional statutory violations under CPL 190.25 (4) (a) and Penal Law § 215.70, arising from a prosecutor's improper disclosure of Grand Jury testimony, does not cure the defect.

Turning to the defamation claim, although plaintiff has stated a cognizable cause of action, it is legally barred by the prosecutor's assertion of qualified privilege under the circumstances of this case.

However, we reject the claim that the prosecutor's letter was absolutely privileged. The critical consideration here, aside from the particular contents of the letter, is that defendant

expressly indicated that the District Attorney declined to prosecute plaintiff for perjury. This factor eliminates defendant's entitlement to a claim of absolute immunity, since there was no ongoing proceeding and, by defendant's own concession, no prospective investigation or prosecution providing a protected context for this particular prosecutor to make these particular statements.

Defendant claims that as an Assistant District Attorney, making a statement on a criminal matter of interest to another law-enforcement agency, he is absolutely immune from civil claims arising out of that statement. Under New York law, a District Attorney, in prosecuting crime, is performing a quasi-judicial function and as such is entitled to absolute immunity from civil claims arising out of the scope of that prosecution (*Arteaga v State of New York*, 72 NY2d 212, 217, n 1). The absolute immunity arising from the prosecutor's exercise of his quasi-judicial discretion reflects a public interest in shielding public officials from retaliatory lawsuits so as to allow them to freely exercise their discretion within the scope of their duties (*supra*, at 216; *Rodrigues v City of New York*, 193 AD2d 79, 86). Not all discretionary actions, though, are absolutely immune (*Arteaga v State of New York, supra*, at 216). Our courts take a functional approach to the issue (*Rodrigues v City of New York, supra*). We have long provided the prosecutor, as a quasi-judicial officer, with immunity from civil suits only for official acts performed in the investigation and prosecution of criminal charges (*Rodrigues v City of New York, supra*, at 87; *Schanbarger v Kellogg*, 35 AD2d 902, *mot to dismiss appeal granted* 29 NY2d 649, *cert denied* 405 US 919).

However, we have linked a prosecutor's entitlement to absolute immunity to the nature of the function being performed rather than to the office itself (*Rodrigues v City of New York, supra*, at 85, citing *Ying Jing Gan v City of New York*, 996 F2d 522, 530), absolutely protecting a prosecutor's statements made during the initiation of a criminal investigation or during the judicial phase of a criminal proceeding (*Rodrigues v City of New York, supra,* at 85, citing *Imbler v Pachtman*, 424 US 409, 430). If defendant had made statements concerning plaintiff's alleged perjury in the context of investigating that crime or filing charges, then, in performance of the very duties with which the prosecutor is vested (*see, Arteaga v State of New York, supra*, at 217-218 [correction officers' duties include investigating inmates' misbehavior and filing reports with the Department of Correctional Services; absolute immunity]), he would have been exercising discretion of a quasi-judicial nature.

By contrast, advising police of a target's criminal acts, even during the investigative phase of a criminal proceeding (*see, Burns v Reed,* 500 US 478), even when the purpose is to determine whether the target should be arrested (*see, Buckley v Fitzsimmons,* 509 US 259), or even when a Grand Jury eventually is empaneled with regard to those specific crimes (*see, supra*), does not provide a basis to absolutely immunize the prosecutor with regard to his statements. When a Grand Jury or a court is not intended to be convened, the prosecutor is not exercising a prosecutorial function (*Rodrigues v City of New York, supra*). However, we need not determine whether an ongoing criminal investigation might have resulted in Grand Jury action; defendant's own letter makes unequivocably clear that a Grand Jury was not going to be empaneled on the alleged perjury, nor would any formal criminal investigation be conducted. Rather, defendant communicated his own conclusions based on plaintiff's testimony in a separate proceeding. Thus, there is no legal basis to grant defendant absolute immunity for the challenged communication under the factual circumstances of this case.

Justice Rosenberger's concurrence would immunize a prosecutor for *his* decision to pursue administrative remedies rather than to criminally prosecute. We respectfully note that this misses the point—the prosecutor here urged *others* to engage in disciplinary action. The concurrence relies on *Davis v Grusemeyer* (996 F2d 617) in support of this proposition. However, that case addressed several prosecutors' absolute immunity in an action for malicious prosecution, not defamation, arising out of the affirmative decision to prosecute, when the conviction ultimately was vacated on appeal. That case invokes policy concerns fundamentally different from the one before us. Moreover, the only "administrative" dimension of that case was the prosecutors' decision not to refer that defendant to a State rehabilitation program that was specifically established as an alternative to criminal prosecution, participation in which depended on a prosecutor's consent. Again, the issue of immunity there was on a very different footing from this defendant's recommendation to an entirely different agency that plaintiff be fired.

As an alternative, defendant claims entitlement to the benefit of a qualified privilege enuring to prosecutors acting in an administrative, rather than prosecutorial, capacity. Generally, a communication made by a person with an interest or duty to make the communication and sent to a person with a corresponding interest or duty, is protected by a qualified privilege

(*Weldy v Piedmont Airlines*, 985 F2d 57, 62 [2d Cir 1993]; *Kalika v Stern*, 911 F Supp 594, 603).

In New York, the defamation defendant bears the initial burden of establishing the validity of the privilege in relation to the challenged statements and is required to make a prima facie justification for their publication (*Garson v Hendlin*, 141 AD2d 55, 61, *lv denied* 74 NY2d 603), upon which showing the burden shifts to the plaintiff to demonstrate actual malice or ill will (*Toker v Pollak*, 44 NY2d 211, 219). Malice requires two showings: the malice standard articulated in *New York Times Co. v Sullivan* (376 US 254), requiring that the declarant spoke with a significant awareness that the statement was probably false (*Liberman v Gelstein*, 80 NY2d 429, 438), and the common-law standard, that the declarant was motivated by spite or ill will (*Liberman v Gelstein, supra*, at 439). Good-faith communications to a prosecutor by a declarant before criminal proceedings are commenced typically are qualifiedly privileged (*Kalika v Stern, supra*, at 604; *Toker v Pollak, supra*, at 221; *Patane v Griffin*, 164 AD2d 192, *lv denied* 77 NY2d 810) in recognition of the public benefit of encouraging citizens to bring information about crimes to police or prosecutors who could then commence criminal investigations (*Toker v Pollak, supra*, at 221). In this case, the prosecutor brought the information to the police, explicitly not to commence a criminal investigation, but to encourage the Police Department to terminate plaintiff's employment. One might conclude that issues of motivation, if not readily apparent on the face of the letter, are inherently factual. However, we are constrained by Court of Appeals case law circumscribing the factual inquiry. Pursuant to *Liberman v Gelstein* (*supra*, at 439), a triable issue arises only if malice was the sole motivation. Thus, the court concluded that if the defendant's statements were made to further the interest protected by the privilege, it matters not whether defendant also acted with spite or ill will. On the basis of this record, we cannot conclude as a matter of law that no common interest, in removing from the force police officers who are dishonest by virtue of false testimony and untruthful reports, was being advanced.