Howard M. PRITZKER and Katherine L. Pritzker, individually and in behalf of all others similarly situated, Plaintiffs,

v.

CITY OF HUDSON, James L. O'Neil, James J. Dolan, Jr., Paul Kisselbrack, Glenn Martin, and Anthony Moon, as individuals and in their official capacities, Defendants.

No. 1:97–CV–1405.

United States District Court, N.D. New York.

Oct. 30, 1998.

David Seth Michaels, Spencertown, NY (David Seth Michaels, of counsel), for Plaintiffs.

Bartlett, Pontiff Law Firm, Glens Falls, NY (John J. Poklemba, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiffs commenced this action against defendants pursuant to 42 U.S.C. § 1983 alleging claims of malicious prosecution, excessive force, and denial of due process of law and the right of privacy. Before the Court is defendants' motion pursuant to FED.R.CIV.P. 12(b)(6) seeking dismissal of plaintiffs'[1] complaint in its entirety.

## I. BACKGROUND

In 1988, Plaintiff Howard Pritzker ("plaintiff") cooperated with law enforcement officials regarding the investigations of certain members of the City of Hudson Police Department ("HPD"). Plaintiff alleges that certain members of the HPD became aware of his cooperation and instituted a campaign of retaliation against him.

Plaintiff alleges that the campaign of retaliation began on January 10, 1990, when Defendant James L. O'Neil, a detective with the HPD, signed two misdemeanor complaints alleging that plaintiff had made false statements violating N.Y. PENAL LAW § 210.45. Oneil's complaints charged that plaintiff falsely signed a deposition stating that he was the victim of a theft. The Complaint further alleges that, in March 1990, Defendant James J. Dolan, Jr., then Chief of the HPD, requested a copy of plaintiff's military records "[i]n order to verify Mr. Pritzker's military record, and establish his credibility." *See* Complaint, ¶ 12. The Army Reserve Personnel Center in St. Louis, Missouri, sent a copy of plaintiff's military records to Dolan. Plaintiff asserts that the Assistant District Attorney withdrew the false statement charges in April 1990, and the Hudson City Court dismissed the charges on April 17, 1990.

Plaintiff further alleges that in April 1990, Defendant O'Neil signed a new complaint alleging that Pritzker violated Hudson City Code § 78–31 by turning in a false alarm. According to plaintiff, this new complaint was based upon the same underlying conduct as the false statement charge and was signed by O'Neil after he learned that the District Attorney's office declined to prosecute the false statement charges. Plaintiff claims that the Hudson City Court dismissed this complaint on September 24, 1990.

---

**1.** Plaintiff Katherine Pritzker asserts derivative claims for loss of consortium. As will be discussed, her claims are dismissed. While Katherine Pritzker continues to be a named party, in the discussion that follows, the Court will refer only to the Plaintiff Howard Pritzker, except where specifically noted otherwise.

Plaintiff asserts that, upon the favorable termination of these charges against him, defendants were required to seal or return plaintiff's military records in accordance with N.Y.CRIM.PRO.LAW § 160.50 ("CPL § 160.50"). Instead, according to plaintiff, defendants retained the records pursuant to their "custom and practice of ignoring the requirements of CPL § 160.50 and developing dossiers about various individuals from all available materials." *See* Complaint, ¶¶ 23–24.

On February 13, 1996, plaintiff testified as a witness in a tort case in Supreme Court, Columbia County. According to plaintiff, he described his twenty-year military career. O'Neil became aware of plaintiff's testimony and believed it to be false. O'Neil allegedly obtained a copy of the transcribed testimony from the civil trial and compared it with the military records on file with the police department. The Complaint further alleges that in January 1997, Defendant Paul Kisselbrack, a detective with the HPD, signed and filed a felony complaint against plaintiff charging him with first degree perjury arising from his state court testimony in violation of N.Y.PENAL LAW § 210.15.

Judge Russell Ballor signed a warrant for plaintiff's arrest. Plaintiff voluntarily surrendered at the police department on March 24, 1997. Plaintiff claims that, at that time, he informed Defendant Anthony Moon, an officer with the HPD, that he had sustained injuries to his wrists and that the handcuffs should not be too tight. Plaintiff claims that Moon placed the handcuffs tightly on plaintiff's wrists and chained him to a bench in a holding cell, causing him serious and permanent injury.

According to plaintiff, on July 1, 1997, the Grand Jury returned a "no bill" on the perjury charge, indicating that "the evidence was not of sufficient credible worth to warrant a prosecution." *See People v. Dykes*, 86 A.D.2d 191, 449 N.Y.S.2d 284 (2d Dept.1982). Thus, in July 1997, the Hudson City Court allegedly entered an order pursuant to CPL § 160.50 requiring that plaintiff's files be sealed and/or returned to plaintiff. Plaintiff alleges that he has not yet received those files.

Plaintiff commenced this action alleging malicious prosecution (first cause of action), excessive use of force (second cause of action), and violation of due process and the right of privacy (third and fifth causes of action).[2] Defendants now move pursuant to FED.R.CIV.P. 12(b)(6) to dismiss the Complaint.

## II. DISCUSSION

### A. Local Rule 7.1(b)

Local Rule 7.1(b) governs pre-trial dispositive motions and provides that "[o]pposition papers shall be prepared and served on the moving party within *TWENTY–ONE CALENDAR DAYS* from the date on which the motion papers were served by the original moving party.... The parties may agree to a reasonable extension of time in which to serve opposition papers." (emphasis in original).

On June 12, 1998, defendants served plaintiff with a notice of motion pursuant to FED. R.CIV.P. 12(b)(6) seeking dismissal of the Complaint. Not having received timely opposition papers, defendants filed their motion papers with the Court on July 8, 1998. Plaintiff served opposition papers on defendants on July 15, 1998, thirty-three days after being served with the moving papers.[3]

■ There is nothing in the record evidencing that the parties agreed to grant plaintiff an extension of time to serve opposition papers. Similarly, plaintiff did not request and this Court did not grant an extension of time to serve the opposition papers. Accordingly, plaintiff's reply papers are untimely.

The Local Rules are clear: "Any papers required under this Rule that are not timely filed ... shall, unless for good cause shown, not be considered. Failure to file or serve any papers as required by this Rule shall,

---

**2.** Plaintiffs' fourth cause of action is not a cause of action at all, but merely requests an award of punitive damages.

**3.** Plaintiff did not file his opposition papers until July 30, 1998.

unless for good cause shown, be deemed by the court as consent to the granting or denial of the motion, as the case may be." N.D.N.Y. Local R. 7.1.(b)(3). The Local Rules further provide that "failure to comply with Local Rule 7.1, subjects the offender to discipline as the court shall deem appropriate including sanctions and the imposition of costs and attorneys' fees to opposing counsel." N.D.N.Y. Local R. 7.1(k).

▮ In an effort to show "good cause", plaintiff's attorney, Mr. Michaels, asserts that he is a sole practitioner, had prior court dates, and miscalculated the time within which he was required to serve opposition papers. After consideration, the Court accepts the opposition papers. However, sanctions are appropriate against Michaels for filing untimely papers. *See* N.D.N.Y. Local R. 7.1(k). Michaels is, therefore, Ordered to Show Cause, within fourteen days of the date of this Memorandum—Decision and Order, why the Court should not impose sanctions, monetary and/or otherwise. Michaels' showing will be taken on submit only and shall consist of either an affidavit or memorandum of law not to exceed five pages. The Court will now address the merits of defendants' motion.

### B. Standard Under Rule 12(b)(6)

"A complaint may not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff. The review of such a motion is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.... Furthermore, the standard is applied with even greater force where the plaintiff alleges civil rights violations." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d.Cir.1996) (internal quotations and citations omitted). "In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim." *Boddie v. Schnieder,* 105 F.3d

857, 860 (2d Cir.1997). With this standard in mind, the Court now addresses defendants' motion.

### C. Section 1983 Claims—Individual Liability

#### 1. Violation of Right of Privacy

Plaintiff contends that his military records should have been returned to him or sealed in accordance with CPL § 160.50 after the false statement and false alarm charges were dismissed in 1990. Plaintiff asserts that defendants' retention and use of the military records to support the 1997 perjury charge violated his Constitutional rights of privacy and due process of law guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. Defendants respond that an alleged violation of CPL § 160.50 does not implicate a Constitutional violation and that military records do not fall within the scope of "official records and papers" contemplated by this section.

To state a claim under section 1983, "a plaintiff must allege a violation of the rights secured by the Constitution or laws of the United States, and that such violation was committed by a person acting under color of state law." *Kern v. City of Rochester,* 93 F.3d 38, 43 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997) (citing *Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Dev. Agency,* 77 F.3d 26, 29–30 (2d Cir.1996)). Here, plaintiff alleges that his Constitutional rights of due process of law and privacy were violated because the defendant police officers violated CPL § 160.50.

#### a. Whether CPL § 160.50 Creates a Constitutionally Protected Right

▮ Section 160.50 does not create a constitutionally protected right. "A defendant has no inherent or constitutional right to the return of photographs, fingerprints or other indicia of arrest where charges are dismissed." *People v. Patterson,* 78 N.Y.2d 711, 579 N.Y.S.2d 617, 618, 587 N.E.2d 255 (N.Y. 1991) (citing *In re Molineux,* 177 N.Y. 395, 69 N.E. 727 (1904); *People v. Anderson,* 97 Misc.2d 408, 411 N.Y.S.2d 830). Rather, in

New York, "this entitlement ... is statutorily conferred by CPL 160.50." *Id.* The New York Court of Appeals has stated that:

> The legislative history of CPL 160.50 does not at all support an intent on the part of the Legislature to create a constitutionally derived right.... Indeed, the over-all scheme of the enactment demonstrates that the legislative objective was to remove any 'stigma' flowing from an accusation of criminal conduct terminated in favor of the accused, thereby affording protection ... to such accused in the pursuit of employment, education, professional licensing and insurance opportunities.

*Id.* at 619, 587 N.E.2d 255 (citing *Anderson,* 97 Misc.2d 408, 411 N.Y.S.2d 830). The New York Court of Appeals has, thus, concluded that, at least with respect to the fourth amendment, "although the statutory right ... serves important purposes and protects important interests, the infringement of that right does not implicate constitutional considerations." *Id.; see Charles Q. v. Constantine,* 85 N.Y.2d 571, 626 N.Y.S.2d 992, 994, 650 N.E.2d 839 (1995) ("Petitioner's argument that the unsealed evidence was admitted in violation of his constitutional rights is unavailing in light of *Patterson,* where we concluded that a violation of CPL 160.50 'does not implicate constitutional considerations.' ") (citing *Patterson,* 78 N.Y.2d 711, 579 N.Y.S.2d 617, 587 N.E.2d 255; *United States v. Jakobetz,* 955 F.2d 786, 802 (2d Cir.1992)). The Second Circuit also has indicated that a violation of CPL § 160.50 does not implicate Constitutional rights. *See Jakobetz,* 955 F.2d at 802 ("There is no authority to indicate that [plaintiff's] constitutional rights have been violated [by the police's continued possession of photographs used in his arrest and prosecution]. At most, [plaintiff] may be able to argue that a New York court violated a statutory right under New York law.").

With one exception, no court has sustained a section 1983 claim premised upon a violation of CPL § 160.50. *See Griffin v. Kelly,* 1994 WL 9670 (S.D.N.Y. Jan. 11, 1994); *Grandal v. City of New York,* 966 F.Supp. 197 (S.D.N.Y.1997); *Compton v. Middaugh,* 1998 WL 59451 (N.D.N.Y.) (Pooler, J.); *Moore v. Dormin,* 173 Misc.2d 836, 662 N.Y.S.2d 239 (Sup.Ct.1997) ("The violation of CPL 160.50 ... simply does not implicate any right of constitutional dimension [ ]."), *aff'd,* 676 N.Y.S.2d 90, 93 (1st Dept.1998) ("[T]he court correctly dismissed the constitutional privacy claims, insofar as a violation of the sealing statute, CPL 160.50, 'does not implicate constitutional considerations.' ") (citations omitted) (Tom, J. concurring); *but see Anderson v. City of New York,* 611 F.Supp. 481 (S.D.N.Y.1985) (sustaining a section 1983 claim based on a violation of CPL § 160.50). While most courts have questioned the continuing validity of *Anderson* in light of *Patterson, Constantine,* and *Jakobetz,* they nonetheless have proceeded to distinguish *Anderson.*[4] This Court agrees that *Anderson* has been superseded and that section 160.50 does not create a liberty interest in reputation or privacy. *See Moore v. Dormin,* 676 N.Y.S.2d 90, 93 (1st Dept.1998) (Tom, J., concurring) ("To whatever extent *Anderson v. City of New York* can be read for the proposition that CPL § 160.50 creates a § 1983 liberty interest in reputation or privacy, it has been superseded by *Constantine* and *Patterson,* and its continued vitality has been questioned in Federal case law ... in light of these decisions.").

 Even if section 160.50 creates a Constitutionally protected right, the records at issue here are not of the type contemplated by section 160.50. Section 160.50 requires the sealing of "all official records and papers ... relating to the arrest or prosecution." This section has been held to be inapplicable

---

4. The present case also is distinguishable from *Anderson* because: (1) there are no allegations that the Hudson City Court issued a sealing order as required under the 1990 version of CPL § 160.50 to invoke the sealing requirement; (2) plaintiff does not allege to have suffered from the type of discrimination that section 160.50 was intended to remedy; (3) the facts in *Anderson* were much more egregious than those here because, in *Anderson,* the police were repeatedly put on notice of the sealing order, but, nonetheless, failed to seal the records; (4) the type of harm plaintiff alleges to have suffered—humiliation from the perjury prosecution—is not protected by section 160.50, *see People v. Gilbert,* 136 A.D.2d 562, 523 N.Y.S.2d 557–58 (2d Dept. 1988); and (5) plaintiff fails to allege any facts supporting his claims of harm to reputation.

to documents that are created in the regular course of business, created prior to the commencement of the criminal proceeding, are innocuous on their face, and were not generated in furtherance of the prosecution of the criminal proceeding. *See People v. McGurk*, 229 A.D.2d 895, 645 N.Y.S.2d 923, 924 (3d Dept.1996). Similarly, things marked into evidence in the course of a criminal trial do not necessarily become part of an official record required to be sealed. *Matter of Anonymous*, 95 A.D.2d 763, 464 N.Y.S.2d 194, 196 (2d Dept.1983).

■ In the present case, although the military records were used to support plaintiff's arrest and prosecution, they are not the type of records required to be sealed. Plaintiff's military records were created in the ordinary course of military affairs, were created prior to the commencement of the criminal perjury proceeding in 1997, are innocuous on their face, and were not generated in furtherance of the prosecution of the criminal proceedings. Furthermore, the records are not "records of the prosecutor, the court or a police agency," but are military records. *McGurk*, 645 N.Y.S.2d at 924 (citing *People v. Roe*, 165 Misc.2d 554, 628 N.Y.S.2d 997 (Sup.Ct.1995)). Plaintiff's military records, standing alone, do not subject plaintiff to any stigma with which CPL § 160.50 is concerned. *See Vrooman v. Dentes*, 205 A.D.2d 235, 619 N.Y.S.2d 790, 792 (3d Dept.1994), *leave to appeal dismissed*, 85 N.Y.2d 934, 628 N.Y.S.2d 45, 651 N.E.2d 913 (1995) ("[A] proper recognition of the purpose underlying the legislation strongly opposes an interpretation that would encompass forensic evidence collected prior to the institution of any criminal proceeding and having no probative value."). Further, it would be illogical to conclude that the military would be required to relinquish to the HPD its own records that it lawfully maintains because they were used in connection with a criminal proceeding.

### b. Whether 5 U.S.C. § 552a Creates a Constitutionally Protected Right

■ The Court also finds unavailing plaintiff's assertion that 5 U.S.C. § 552a (the "Privacy Act of 1974") creates a constitutional entitlement to privacy that supports his section 1983 claim. The Privacy Act of 1974 provides for certain privacy protections for the records of individuals maintained by federal agencies. The Privacy Act is inapplicable to state or local agencies. *St. Michael's Convalescent Hosp. v. State of California*, 643 F.2d 1369, 1373 (9th Cir.1981). Further, the act does not prohibit requesting records, but regulates how and when an agency may disclose protected records. *See* 5 U.S.C. § 552a.

### 2. Malicious Prosecution

Plaintiff's claim for malicious prosecution, however, does relate to rights secured by the Constitution. *See Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir.1997). Plaintiff alleges that he was maliciously prosecuted by defendants on the first degree perjury charge. Plaintiff insists that the charge was maliciously instituted without probable cause and was terminated in his favor. Defendants respond that not all of the named defendants were involved in the institution of the perjury charge, the perjury proceeding was not terminated in plaintiff's favor, they had probable cause to commence the proceeding, they did not act with malice, and that the defendants are entitled to qualified immunity.

■ Under New York law, to establish a claim for malicious prosecution, plaintiff must demonstrate: (1) the initiation of criminal proceedings against him by defendant(s); (2) termination of such proceedings in plaintiff's favor; (3) lack of probable cause; and (4) actual malice. *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983); *Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir.1998) (citing *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996)).

### a. Initiation of Criminal Proceedings

■ Plaintiff's Complaint fails to state a cause of action for malicious prosecution against defendants Dolan, Martin, and Moon because they did not initiate or continue the perjury charge. The sole allegation against Dolan is that he requested a copy of plaintiff's military records in March 1990. Dolan apparently retired as Chief of Police in 1991.

While the military records allegedly were instrumental to the perjury charge, it cannot be said that Dolan's conduct, occurring seven years prior to the filing of the perjury charge, constitutes the type of active role in plaintiff's prosecution necessary to satisfy the first element of a malicious prosecution claim.

Similarly, the only allegation against Martin is that he, as Chief of Police, maintains files in his office under lock and key regarding plaintiff and others, including the military files at issue here. The Complaint alleges that these files are not related to any legitimate law enforcement activity, but are dossiers maintained for the purpose of accumulating intelligence about plaintiff for the purposes of prosecuting him. (Complaint, ¶ 48). These conclusory allegations are insufficient to demonstrate that Martin played an active role in plaintiff's prosecution.

Finally, the allegations against Moon are devoid of any connection with his perjury prosecution. The sole allegations against Moon are that he "negligently and recklessly placed the handcuffs extremely tightly on plaintiffs [sic] wrists and chained him to a bench in a holding cell that reeked of urine." (Complaint, ¶ 38). Moon's actions are unrelated to the initiation or continuation of criminal proceedings against plaintiff.

The Court finds, however, that O'Neil and Kisselbrack did play an active role in the initiation and continuation of criminal proceedings against plaintiff. It is undisputed that Kisselbrack signed the felony complaint and, therefore, the first element is established as to him. The Complaint alleges that O'Neil initiated criminal proceedings against plaintiff on numerous occasions. The Complaint also alleges that O'Neil was responsible for discovering the alleged perjury and obtained a copy of a court transcript to investigate his suspicion of perjury. *See* Complaint, ¶¶ 26–28. Resolving all reasonable inferences in favor of plaintiff, it appears that O'Neil may have acted in concert with or otherwise encouraged, given advice to, or importuned Kisselbrack to initiate the perjury charge. *See DeFilippo v. County of Nassau,* 183 A.D.2d 695, 583 N.Y.S.2d 283, 284

(2d Dept.1992), *leave denied,* 85 N.Y.2d 806, 627 N.Y.S.2d 323, 650 N.E.2d 1325 (1995).

### b. Termination of Proceedings in Plaintiff's Favor

Contrary to defendants' assertion, the grand jury's return of a "no bill" is a termination of a criminal proceeding in plaintiff's favor. *See Beary v. City of Rye,* 44 N.Y.2d 398, 408, 406 N.Y.S.2d 9, 377 N.E.2d 453 (1978) ("The criminal proceedings on which his claim is premised terminated in his favor when the Grand Jury dismissed all the charges against him."); *Creary v. Village of Mamaroneck,* 110 A.D.2d 870, 488 N.Y.S.2d 427, 429 (2d Dept.1985); *Colena v. City of New York,* 68 A.D.2d 898, 414 N.Y.S.2d 220, 221 (2d Dept.1979); *Tunia v. State of New York,* 106 Misc.2d 601, 434 N.Y.S.2d 846, 847 (Ct. Claims 1978); *see also Barbour v. State. of New York,* 163 Misc.2d 321, 620 N.Y.S.2d 892, 896 (Sup.Ct.1994); N.Y.CRIM.PRO.LAW § 190.75; CPL § 160.50(3).

### c. Lack of Probable Cause

The existence of probable cause depends on whether "the knowledge of facts, actual or apparent, [are] strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl,* 13 F.3d 625, 629 (2d Cir.1994) (citing *Pandolfo v. U.A. Cable Systems of Watertown,* 171 A.D.2d 1013, 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991)); *see also Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983). Plaintiff's Complaint alleges that the defendants acted without probable cause. The Complaint further alleges, however, that an arrest warrant was issued for this charge. (Complaint, ¶ 29). While the issuance of an arrest warrant usually creates a presumption of probable cause, "[t]hat rule is inapplicable [ ] where the warrant is issued by a judge on the basis of the sworn accusations of the defendant in the malicious prosecution action." *Russo v. State of New York,* 672 F.2d 1014, 1018 (2d Cir.1982), *modified on other grounds,* 721 F.2d 410 (1983).

Drawing all reasonable inferences and resolving all ambiguities in favor of the

non-moving party, the Court concludes that the Complaint is sufficient to withstand defendants' motion to dismiss on this ground. There are insufficient facts before the Court regarding the arrest and the issuance of the arrest warrant to determine whether defendants acted with probable cause or whether defendants are entitled to a presumption of probable cause.

#### d. Malice

Lastly, the Complaint sufficiently alleges malice. The allegations that the defendants retaliated against plaintiff for his cooperation in the investigation of certain members of the HPD and that O'Neil instituted several criminal charges against plaintiff, all of which were dismissed before trial, give rise to inferences that the perjury charge was motivated out of wrong or improper motives. *See Nardelli v. Stamberg,* 44 N.Y.2d 500, 406 N.Y.S.2d 443, 444–445, 377 N.E.2d 975 (1978). In addition, if it is determined that the defendants acted without probable cause, then this would support an inference of malice sufficient to overcome defendants' Rule 12(b)(6) motion. *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 131 (2d Cir.1997) ("lack of probable cause generally raises in inference of malice sufficient to withstand summary judgment.").

#### e. Qualified Immunity

Defendants claim that, even if plaintiff can establish a *prima facie* case of malicious prosecution, they are entitled to qualified immunity. "The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable, and reduces 'the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). "Qualified immunity shields officials 'from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Connell,* 153 F.3d at 80 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if 'it was objectively reasonable for the public official to believe that his acts did not violate th[at] right[ ].'" *Id.* (quoting *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991)).

Plaintiff has demonstrated the deprivation of a constitutional right—freedom from arrest or prosecution absent probable cause. *See Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). The question, then, is whether defendants violated clearly established constitutional rights of which a reasonable person would have known, or whether it was objectively reasonable for the defendants to believe that their acts did not violate that right. *See Morgenthau,* 909 F.2d at 78. Police officers are presumed to know the law governing their conduct. *See Catone v. Spielmann,* 149 F.3d 156, 161 (2d Cir.1998) (citing *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993)). Reasonable police officers would know that it is a violation of well-settled constitutional rights to arrest or prosecute someone absent probable cause. It is unclear at this early stage of the litigation whether it was objectively reasonable for defendants to believe that their conduct did not violate that right. As noted previously, there is a question whether defendants had probable cause to charge plaintiff with perjury and/or to obtain an arrest warrant. The issue of qualified immunity cannot be resolved at this early juncture of the case because it is unclear what facts O'Neil made available to Kisselbrack in signing the perjury complaint and what facts were made available to the City Court Judge in obtaining the arrest warrant. *See Morgenthau,* 909 F.2d at 78.

#### 3. Excessive Use of Force

While the basis of plaintiff's second Cause of Action is unclear, the Court assumes that it is an action for the use of excessive force. Plaintiff claims that an excessive use of force

was applied to him when he was handcuffed by Moon. Defendants respond that this cause of action applies only to Moon, that Moon did not use excessive force, that Moon cannot be held individually liable because of the protections afforded by N.Y.GEN.MUN.LAW § 50–j [5], and that Moon is entitled to qualified immunity.

The Complaint makes no allegations of excessive use of force regarding the defendants other than Moon and, therefore, this cause of action is dismissed as to the other defendants.

■■■ Freedom from the use of excessive force is a clearly established constitutional right. *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990). Excessive use of force claims invoke the Fourth Amendment "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Finnegan,* 915 F.2d at 823. The issue is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him. *Id.* Factors to consider include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

■■■ The Complaint sufficiently sets forth a cause of action for excessive force. The alleged crime was for perjury—hardly a violent crime. There is no indication that plaintiff posed an immediate threat to the safety of the officers or others. Further, the Complaint alleges that plaintiff voluntarily surrendered himself to the police. Thus, plaintiff was not actively resisting arrest or attempting to evade arrest by flight. Further, plaintiff alleges that he advised Moon that "he had previously sustained an injury to both wrists and that handcuffs should not be too tightly placed on his wrists." (Complaint, ¶ 38). Finally, the Complaint alleged that plaintiff suffered injuries as a result of Moon's placing the handcuffs tightly around plaintiff's wrists and chaining him to a bench. *See Robison*

*v. Via,* 821 F.2d 913, 923–24; *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir. 1993) ("An excessive use of force claim could be premised on [the] Officer['s] handcuffing [plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him."); *Howard v. Dickerson,* 34 F.3d 978, 981 (10th Cir.1994) (handcuffing despite known medical condition); *Palmer v. Sanderson,* 9 F.3d 1433, 1436 (9th Cir.1993); *Harvey v. Brandt,* 677 N.Y.S.2d 867, 868 (4th Dept.1998); *cf Owens v. Colburn,* 860 F.Supp. 966, 971–72 (N.D.N.Y.1994), *aff'd,* 60 F.3d 812 (2d Cir.1995).

### a. Qualified Immunity

■■■ There were numerous cases prior to March 1997, the time in question, holding that handcuffing a non-threatening individual in the face of a known medical condition violates clearly established constitutional rights. *See Walton,* 995 F.2d at 1342; *Howard,* 34 F.3d at 981; *Palmer,* 9 F.3d at 1436; *see also Norman v. Talcovitz,* 1995 WL 555706, at *3 (S.D.N.Y. Sept 18, 1995) (Lee, Magistrate Judge). Furthermore, as previously discussed, under the facts and circumstances of this case, it appears that, assuming the facts in plaintiff's complaint to be true, a reasonable officer would understand that what he was doing violated plaintiff's rights. *See Finnegan,* 915 F.2d at 823. Similarly, it is questionable at this juncture whether it was objectively reasonable for Moon to believe that his conduct did not violate these rights.

### 4. Official Capacity Claims

■■■ The above discussion addresses those claims asserted against the defendants in their individual capacities. A claim against a municipal officer acting in his official capacity is, in reality, a claim against the municipal entity itself. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, plaintiff's claims against the various police officers in their official capacities are to be treated as a suit

---

5. This argument is without merit. Section 50–j merely provides for the indemnification of a police officer found liable "for any negligent act or

tort ... [committed while the police officer] was acting in the performance of his duties and within the scope of his employment."

against the City of Hudson. In that regard, plaintiff's claims against the defendants in their official capacities are dismissed.

### D. Section 1983 Claims—Municipal Liability

■ "[M]unicipal liability under § 1983 may be premised upon an officially promulgated policy; a custom or persistent practice; deliberately indifferent training that is the proximate cause of the violation of plaintiff's federally protected rights; or a single decision by an official with final decision making authority." SECTION 1983 LITIGATION, CLAIMS AND DEFENSES, 3d Ed., Martin A. Schwartz and John E. Kirklin, Vol. 1, § 7.6, p. 21 (citations omitted).

■ The only policy alleged in the Complaint is that in approximately 1988, defendants instituted a custom and practice of maintaining dossiers for the purpose of accumulating intelligence about plaintiff and others which could be used to prosecute or otherwise injure them. *See* Complaint, ¶¶ 48–49. Plaintiff asserts that the "City of Hudson has known of such policy, custom or usage and has protected, condoned, ratified and approved the maintenance of such filed since on or about April 13, 1990." *See* Complaint, ¶ 49.

As previously stated, however, the maintenance of plaintiff's military records in violation of CPL § 160.50 does not constitute a constitutional violation. *See* discussion above. Without a constitutional violation, there can be no municipal liability.

■ Plaintiff does not allege any municipal policy or custom, deliberately indifferent training, or decisions by an official with final decision making authority relating to the malicious prosecution or excessive use of force claims and, accordingly, these claims must be dismissed against the City of Hudson.

### E. LOSS OF CONSORTIUM

■ Plaintiff's wife, Katherine Pritzker, asserts claims for loss of consortium. Loss of consortium is not an independent cause of action, but is derivative. *See Millington v. Southeastern Elevator Co.,* 22 N.Y.2d 498, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968).

This Court has no jurisdiction over the derivative claims.

■ First, the Court has no independent jurisdictional basis over Katherine Pritzker's derivative claim. There is no diversity jurisdiction and she does not assert federal question jurisdiction. In particular, Katherine Pritzker does not allege a violation of a right cognizable under section 1983.

■ Second, section 1983 does not support a derivative claim for loss of consortium. *See Stallworth v. City of Cleveland,* 893 F.2d 830, 837–38 (6th Cir.1990) ("[Section 1983] provides redress to a party suffering injuries from a deprivation of any rights, privileges or immunities secured by federal law. . . . A loss of consortium claim does not represent an injury based on a deprivation of [such] rights, privileges, or immunities."); *Ortega v. Schramm,* 922 F.2d 684, 689–90 (11th Cir.1991); *Sarmiento v. Texas Board of Veterinary Medical Examiners,* 939 F.2d 1242, 1248 (5th Cir.1991); *Bright v. City of New York,* 1985 WL 505, at \*1 (S.D.N.Y. April 4, 1985) ("loss of consortium is a state law tort claim that is not cognizable under section 1983."); *see also Powell v. Gardner,* 891 F.2d 1039, 1047 (2d Cir.1989). Katherine Pritzker's alleged injury is not one based on a deprivation of her rights, privileges or immunities—the type of injury for which section 1983 provides redress. Further, a party may not claim supplemental, or pendent, jurisdiction based upon the claims of another party. *See Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989) (" 'All our cases . . . have held that a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties.' "). Accordingly, Katherine Pritzker's derivative claims must be dismissed.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART. Plaintiff's first cause of action is DISMISSED as to all defendants except James L. O'Neil and Paul Kisselbrack. Plaintiff's second cause of action is DISMISSED as to

all defendants except Anthony Moon. Plaintiff's third, fourth, and fifth causes of action are DISMISSED in their entirety. Katherine Pritzker's loss of consortium claims are dismissed in their entirety.

IT IS SO ORDERED