[687 NYS2d 330]

Steven Present, Respondent, v Avon Products, Inc., et al., Appellants, et al., Defendants.

Steven Present, Respondent, v Avon Products, Inc., et al., Appellants.

First Department, March 30, 1999

**APPEARANCES OF COUNSEL**

*Donald A. Derfner* of counsel (*Christopher P. Benischek* on the brief; *Derfner & Mahler, L. L. P.,* attorneys), for respondent.

*T. Barry Kingham* of counsel (*Michelle A. Rice, Steven A. Reiss* and *Christopher Morvillo* on the brief; *Curtis, Mallet-Prevost Colt & Mosle,* and *Weil, Gotshal & Manges,* attorneys), for appellants.

## OPINION OF THE COURT

ROSENBERGER, J. P.

Plaintiff Steven Present was dismissed by his employer, defendant Avon Products, Inc., after an internal investigation turned up evidence that he had falsified billing records and stolen company property. Defendants Henry Isdith and Susan Pike were fellow employees who described Present's misconduct to management and provided supporting documentation. Defendant Al Urbont, an outside vendor, did the same. Avon referred the matter to the police, who in turn contacted the District Attorney's office. Present was charged with seven misdemeanors; he was acquitted of one, and the jury was unable to reach a verdict on the other six. The District Attorney decided against a retrial and the remaining charges were dismissed. Plaintiff then asserted the instant claims for defamation and malicious prosecution. As the following elaboration of the facts will show, however, these claims should have been dismissed.

Avon is a well-known manufacturer and vendor of beauty products. Its biweekly sales brochure is a primary selling device used by its representatives who sell the products to consumers. At all times relevant to this action, Present was one of four Creative Managers in the Brochure Department, which designed the sales brochure. Defendants Pike and Isdith were art directors who worked directly under him. In early 1991, Dennis Holland was appointed Creative Director, which made him Present's immediate supervisor. Holland then interviewed all the employees in the department, in order to familiarize himself with the people and activities he would be supervising.

As Holland was making his rounds, he turned up several instances of questionable conduct by Present. First, Mary Fiedler, the billing coordinator, mentioned that Present often broke down large vendors' invoices into several smaller ones in amounts below $2,000, his personal approval authority. Such a practice would enable him to shield improper invoices from review.

Second, when Holland interviewed Pike on June 6, 1991, she told Holland that Present had directed her to purchase a

leather jacket as a prop for a photo shoot and to give it to him after the shoot was completed. She also said that at Present's urging, she asked the stylist who supplied the jacket to submit a falsified invoice so that Avon would not detect Present's appropriation of the jacket for his personal use. In defense of her part in this wrongful scheme, Pike said she was afraid of losing her job if she defied Present. Additionally, Pike stated that Present had directed her to approve invoices from Rasulo Graphic Service, Inc., a photograph processing company, for developing personal photographs for Present's friend. The invoices billed this work to Avon.

Third, a few days later, Holland interviewed Isdith, who mentioned yet another unorthodox act by Present. Present allegedly directed Isdith to tell Urbont, the Rasulo representative, to buy a $900 watch for Present's personal use and charge it to Avon. Like Pike, Isdith claimed he had approved the fictitious bills (which he had marked with a "W" to distinguish them from real Avon expenses) out of fear for his job.

Shortly thereafter, Urbont sent Holland two letters confirming that he had sent Avon fictitious bills to cover the personal expenses of the watch and the photographs, because Present allegedly threatened to cease doing business with Rasulo unless he complied. Urbont enclosed copies of the relevant invoices and receipts.

Holland advised his superiors of what he had learned. The matter was referred to Avon's in-house counsel, who reviewed the documents and independently interviewed Fiedler, Pike, Isdith and Urbont to confirm what they had reported. Pike and Isdith signed affidavits setting forth their stories.

Even then, Present was not terminated. Executives from the Human Resources and Legal Departments confronted him with the accusations. When he could offer no convincing explanation, he was suspended pending further investigation. After two other outside vendors admitted billing Avon for clothing for Present's personal use, Avon terminated Present's employment on June 20, 1991.

Avon's Internal Audit and Security Departments conducted their own independent investigation and found the same evidence. John Massoni of the Security Department submitted the matter to the police department, which referred it to the District Attorney's office. The District Attorney's Office initially sought to charge Present with grand larceny, a felony. This complaint was superseded by a prosecutor's information containing seven misdemeanor counts: three counts of petit

larceny (the watch, the photos and the jacket), two counts of falsifying business records (for the watch and the jacket), and two counts of criminal coercion of Pike and Isdith. On November 25, 1992, the jury acquitted Present of the petit larceny charge relating to the photos, but was unable to agree on the other charges. The District Attorney elected not to retry Present and the charges were dismissed.

Present brought two related actions against his accusers, which were consolidated. On May 26, 1992, after criminal charges had been filed, he sued Avon, Pike, Isdith, Massoni, Urbont and Rasulo, asserting claims of defamation, wrongful termination, fraud and age discrimination. On November 15, 1993, a year after the end of the criminal proceedings, he brought a malicious prosecution action against Avon, Isdith, Pike and Urbont (collectively defendants or defendants-appellants). Present has voluntarily discontinued the fraud claim against all defendants. The claims against Massoni and Rasulo were dismissed on motion. The Civil Court, without discussion, denied defendants-appellants' motion for summary judgment. The Appellate Term reversed in part and granted summary judgment dismissing Present's wrongful termination and age discrimination claims, and Present has not cross-appealed from that portion of the order. The issue before us is therefore whether the Appellate Term erred in finding triable issues regarding the remaining claims for defamation and malicious prosecution. These claims should have been dismissed.

■ Present's defamation claim against the individual defendants is predicated on their reports about him to Avon management. His defamation claim against Avon is based on Avon's statements to the police that he had misappropriated company property and falsified billing records. As defendants asserted in their summary judgment motion, all of the challenged statements are undoubtedly covered by a qualified privilege. This being the case, it was incumbent upon plaintiff to raise an issue of fact as to whether defendants acted with constitutional or common-law malice, which he failed to do.

A good-faith communication upon any subject matter in which the speaker has an interest, or in reference to which he has a duty, is qualifiedly privileged if made to a person having a corresponding interest or duty (*Clark v Somers*, 162 AD2d 982). The common interest privilege covers statements by employees to management about another employee's job-related misconduct (*Loughry v Lincoln First Bank*, 67 NY2d 369, 376). The same is true of statements by an outside vendor or inde-

pendent contractor (*see, Clark v Somers, supra*). This qualified privilege also extends to reports to the police or the District Attorney's office about another's suspected crimes (*Toker v Pollak,* 44 NY2d 211, 220). If the person passing on the information has a good-faith belief in its truth, he is shielded from liability for defamation, even if a more prudent person would not have reported it or the information turns out to be false (*Toker v Pollak, supra,* at 220).

Essentially, to overcome the privilege, plaintiff needs to challenge the good faith of the defendants by showing that they acted with malice (*Loughry v Lincoln First Bank, supra,* at 376). A speaker exhibits constitutional malice, as defined in *New York Times Co. v Sullivan* (376 US 254, 279-280), when he makes a defamatory statement while knowing that it is false or recklessly disregarding whether it is false. The plaintiff must set forth evidence to support the conclusion that defendants entertained serious doubts as to the truth of the statement (*St. Amant v Thompson,* 390 US 727, 731).

In the case at bar, all the evidence points to the contrary. Avon was commendably cautious and thorough in conducting its internal investigation. It made no disclosures to the police until several managers had cross-checked the employees' accusations and compiled a significant file of supporting documentation. Several outside vendors who had no motive to collude confirmed the employees' stories in all major details. Only then did Avon take action.

Plaintiff identifies allegedly favorable evidence that Avon did not investigate, but this is not determinative. Even a negligent investigation, without more, does not create an inference that a defendant suspected the falsity of the information and purposefully avoided seeking out facts that would confirm its falsity (*Sweeney v Prisoners' Legal Servs.,* 84 NY2d 786, 793). Lacking any substantial reason to question the accuracy of its sources, Avon should not be held liable for its good-faith reliance on their statements (*see, Suozzi v Parente,* 202 AD2d 94, 102, *lv dismissed in part and denied in part* 85 NY2d 923).

As to the individual defendants, their statements to Avon management were purportedly based on their first-hand experience of being coerced into facilitating plaintiff's schemes. Plaintiff cannot raise a triable issue simply by calling them liars, especially where the allegations made by the individual defendants were consistent with one another, contrary to their own interests, and backed up by documentary evidence (*see, Moore v Dormin,* 252 AD2d 421).

Alternatively, a plaintiff may try to prove that defendants acted with malice as defined under the common-law standard. A triable issue as to common-law malice is raised only if a reasonable jury could find that the speaker was *solely* motivated by a desire to injure the plaintiff (*Thanasoulis v National Assn. for Specialty Foods Trade*, 226 AD2d 227, 229). The fact that defendants may have harbored ill will towards plaintiff is insufficient, without some evidence that this animus was "the one and only cause for the publication" (*Stukuls v State of New York*, 42 NY2d 272, 282). "If the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant *also* despised plaintiff" (*Liberman v Gelstein*, 80 NY2d 429, 439 [emphasis in original]).

Here, all the statements at issue clearly furthered the purpose of the privilege, namely, to allow companies to investigate employees' criminal misconduct and to share this information with law enforcement authorities. The accusations were specific and verifiable and were not so vituperative or overbroad as to raise a question of malice (*compare, Herlihy v Metropolitan Museum of Art*, 214 AD2d 250). Nor were they published so widely as to fall outside the scope of the privilege (*see, Stukuls v State of New York*, *supra*, at 281 [noting that privilege may be "subject to defeasance by excessive publication"]).

Plaintiff similarly failed to raise an issue of fact as to malicious prosecution. The elements of an action for malicious prosecution are (1) the initiation of a proceeding; (2) its termination favorably to the plaintiff; (3) a lack of probable cause; and (4) malice (*Colon v City of New York*, 60 NY2d 78, 82).

First, plaintiff cannot show that defendants initiated the proceeding. "The mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act" (*Viza v Town of Greece*, 94 AD2d 965, 966; *see also, Al Raschid v News Syndicate Co.*, 239 App Div 289, *affd as mod* 265 NY 1). The individual defendants merely gave testimony at Avon's direction. Thus, this cause of action fails as against them.

As for Avon, its role was limited to reporting the matter to the police and responding to inquiries from law enforcement authorities. One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding (*Hopkinson v Le-*

*high Val. R. R. Co.*, 249 NY 296, 300). We find no evidentiary support for Present's assertion that Avon was willfully ignorant of exculpatory information or withheld same from the police. Plaintiff identifies a few documents that Avon allegedly should have provided, but these are either irrelevant or actually corroborative of the case against plaintiff.

With respect to the second element, favorable termination, defendants conceded this point in prior proceedings. Were we to reach it, we would find that with the exception of the count on which plaintiff was acquitted, the dismissal of the six remaining counts on which the jury did not agree is not a favorable termination because it "leaves the question of guilt or innocence unanswered" (*Ryan v New York Tel. Co.*, 62 NY2d 494, 504-505).

Third, Avon clearly had probable cause to make its complaint to the police. Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in a similar situation to believe plaintiff guilty (*Colon v City of New York, supra*, at 82). As noted above, Avon conducted a thorough investigation that turned up numerous independent sources of evidence supporting plaintiff's guilt, including confessions from other employees involved in the misconduct and corroborating documentation (*Rawson v Leggett*, 184 NY 504, 512). Furthermore, "the jury's inability to reach a verdict * * * confirm[ed] that there surely was probable cause for his prosecution" (*Singleton v City of New York*, 632 F2d 185, 193, *cert denied* 450 US 920). Plaintiff has put forth no evidence of perjury or suppression of evidence to overcome this presumption (*see, Colon v City of New York, supra*, at 83).

Finally, plaintiff has not presented any evidence that Avon acted with malice, which in this context means "a wrong or improper motive, something other than a desire to see the ends of justice served" (*Nardelli v Stamberg*, 44 NY2d 500, 503). According to plaintiff's conspiracy theory, Avon's allegedly bad-faith decision to "frame" him and terminate his employment was motivated by a desire to cut costs. Avon would have fulfilled its entire objective, if such it was, by firing him. It scarcely needed to turn him over to the police. Any issues plaintiff attempts to raise with respect to the individual defendants' motives are academic in light of his failure to show a lack of probable cause for the criminal prosecution. A well-founded prosecution, or one which reasonably appeared so, will not be deemed malicious even if undertaken with "the worst of motives" (*Munoz v City of New York*, 18 NY2d 6, 9).

We have considered plaintiff's remaining contentions and rejected them.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered on or about June 16, 1998, which, insofar as appealed from, affirmed the order of the Civil Court, New York County (Norman Ryp, J.), entered June 12, 1997, denying defendants-appellants' motion for summary judgment dismissing plaintiff's remaining claims for defamation and malicious prosecution, should be reversed, on the law, without costs, the motion granted, and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

Motion seeking a stay and for other related relief denied.

TOM, WALLACH and MAZZARELLI, JJ., concur.

Order of the Appellate Term of the Supreme Court, First Department, entered on or about June 16, 1998, reversed, on the law, without costs, the motion for summary judgment dismissing plaintiff's remaining claims for defamation and malicious prosecution granted, and the complaint dismissed. Motion seeking a stay and for other related relief denied.