Thomas A. Parkin et al., Respondents, v Cornell University, Inc., et al., Appellants.

Third Department, November 29, 1990

---

**APPEARANCES OF COUNSEL**

*Walter J. Relihan, Jr.,* and *Thomas Mead Santoro (Nelson E. Roth, Barney, Grossman, Roth & Dubow* of counsel), for appellants.

*Lo Pinto, Schlather, Solomon & Salk (Raymond M. Schlather* of counsel), for respondent.

**OPINION OF THE COURT**

HARVEY, J.

Plaintiffs' complaint in this action alleged five causes of action: malicious prosecution, false arrest, abuse of process, libel and slander. The action arises out of the fact that defendant Cornell University, Inc. (hereinafter the University) and its personnel brought about the arrest of plaintiff John W. Cleveland for petit larceny and possession of stolen property and plaintiff Thomas A. Parkin for petit larceny. The property consisted of approximately 1,000 envelopes worth a little over $65 which had been taken from the University's print shop.

The evidence gathered from an investigation of the incident and its availability to the personnel who signed the accusatory instruments follows. On August 7, 1987 defendant John Cerio, a mail service manager at the University, received a telephone call informing him that a delivery of a substantial number of envelopes had been made to Cleveland. Cleveland operated a mail-messenger truck under the supervision of Cerio. The University's mail service was a distinctly different organization from its print shop. Cerio then spoke to the supervisor in the print shop and learned that there had been no authorization for the delivery of envelopes to Cleveland. There was no delivery slip attached to the boxes and apparently no address labels on any of them. After obtaining that information, Cerio then drove to the University's mail facility

to ask Cleveland why he had the envelopes. He observed two boxes of envelopes in plain sight within Cleveland's delivery truck, which he confiscated. When he went back to the print shop he was informed that there were four boxes missing. He returned to Cleveland's truck, which Cleveland had already locked for the weekend, and found two more boxes of envelopes concealed by mail that was addressed to "West Campus". There were no addresses on the boxes and no indication where they were supposed to go.

When Cleveland was questioned, his explanation for having possession of the envelopes was that he had been asked by a woman outside the University's alumni house for samples of an invitation-size envelope. According to Cleveland, he did not know the name of the woman nor her connection with the alumni house. He never produced the woman for testimony, nor could he identify her. During the University's investigation, the director of the alumni house was interrogated and refuted Cleveland's statement that someone under her employ had asked for samples of envelopes. She stated that she was aware of the sample display maintained by the print shop and that if she needed samples she would go to the print shop to make her observations. Also, the four individuals having responsibility for ordering supplies for each of the four departments located at the alumni house were unable to identify the woman referred to by Cleveland and they all stated that when they wanted supplies from the print shop they went there to obtain them.

When Parkin was interviewed by University authorities he admitted that he had directed delivery of the boxes of envelopes to Cleveland and said that he did so because Cleveland asked for them. During that interview, Parkin made no mention of having been told by Cleveland that he wanted samples for a woman at the alumni house. The incident was turned over to the University's Department of Public Safety, which conducted an investigation and concluded that reasonable cause existed to charge Cleveland with petit larceny and possession of stolen property and Parkin with petit larceny. Based upon that information, accusatory instruments were executed and plaintiffs were arrested and given appearance tickets to appear in Town Court.

At the time of these events, the University was engaged in hotly contested bargaining negotiations. When both plaintiffs were discharged by the University, they filed a grievance. Shortly thereafter, at an executive staff meeting, the president

of the University directed the granting of plaintiffs' grievance to the extent that plaintiffs' jobs were reinstated with back pay but denied it to the extent that a written warning was placed in each of their files. The misdemeanor charges were also dismissed.

At the trial of this action, defendants argued that the issue of probable cause should not be given to the jury for its determination but should be made by the court; however, their request was denied. Following the submission of plaintiffs' evidence, defendants moved for dismissal of the complaint and again after the completion of all evidence, and those motions were denied. The jury determined that no cause of action had been sustained in the libel and slander charges, but held in favor of plaintiffs on the other alleged causes of action and awarded each $100,000 compensatory and $100,000 punitive damages. Defendants' appeal followed.

■ Initially, defendants contend that Supreme Court erred by not directing verdicts in their favor at the end of plaintiffs' case with respect to the false arrest and malicious prosecution claims on the basis that probable cause to arrest and/or prosecute plaintiffs was established as a matter of law and, thus, this issue should not have been presented to the jury. We must agree with this contention (see, e.g., *Veras v Truth Verification Corp.*, 87 AD2d 381, *affd* 57 NY2d 947).

Lack of probable cause to arrest or prosecute is an integral element of both false arrest and malicious prosecution (see, *Pantazis v Bleau Towing Serv.*, 145 AD2d 816, 817; *Hallenbeck v City of Albany*, 99 AD2d 639).* With respect to a claim for malicious prosecution, the critical issue is what a defendant knew and reasonably believed when he made the sworn statement; with false arrest the inquiry is into what the arresting officer reasonably believed in reliance on that statement (see, *Heller v Ingber*, 134 AD2d 733, 734-735). "In false imprisonment the defendant has the burden of proving probable cause for his actions, while in malicious prosecution the plaintiff must prove an absence of probable cause" (59 NY Jur 2d, False Imprisonment and Malicious Prosecution, § 3, at 264). With respect to false arrest, the presumption that a warrantless arrest is unlawful can be rebutted if, applying the reasonably prudent person test, it is shown that the arresting officer, acting in good faith, had reasonable or probable cause

---

* Probable cause is not, however, a necessary element of the tort of abuse of process (see, 86 NY Jur 2d, Process and Papers, § 134, at 381).

for believing that a plaintiff had committed an offense (59 NY Jur 2d, False Imprisonment and Malicious Prosecution, § 34, at 296). "Whether probable cause existed depends on whether there were 'such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe [the] plaintiff guilty' " *(Feldman v Town of Bethel,* 106 AD2d 695, 697, quoting *Colon v City of New York,* 60 NY2d 78, 82). The issue of probable cause is generally one to be decided by the court as a matter of law where there is no real dispute as to the facts or the proper inferences to be drawn therefrom *(see, Heller v Ingber, supra;* 59 NY Jur 2d, False Imprisonment and Malicious Prosecution, § 133, at 392).

In the case at bar, despite Supreme Court's decision to submit the issue of probable cause with respect to the two claims to the jury, it is clear that no material factual issues were in dispute in relation to a probable cause determination. While the motivations of defendants were disputed, probable cause is measured by what they *knew* at the time of the arrest, not their intent. In other words, the question is not whether defendants thought they had probable cause but rather whether a court would think they did (59 NY Jur 2d, False Imprisonment and Malicious Prosecution, § 34, at 296). Here, it is undisputed that Cleveland, a mail courier whose duties concededly did not include sales, was found after an inventory check by Cerio to be in the unauthorized possession of several boxes of unlabeled and unaddressed boxes of envelopes without delivery slips. Inquiries made by University management to print shop employees who would have been the logical persons to exculpate plaintiffs were unproductive at that stage of the matter. Upon being confronted by his supervisor about the missing boxes, Cleveland returned only two of them and did not volunteer the fact that two other boxes were located in a different area of the truck. Cleveland told Cerio, his supervisor, that he had wanted the envelopes to give to an unknown woman as samples. Although Cleveland promised he would have this unknown person contact Cerio, he never did.

Taking all this information into account, it is apparent that there was evidence strong enough for a reasonable person to believe that there were lawful grounds to justify a prosecution for theft. This is so even giving every favorable inference *(see, Martin v City of Albany,* 42 NY2d 13, 18) to plaintiffs' evidence to the effect that the delivery slip system was not as strict as defendants presented. Despite plaintiffs' contentions

otherwise, their protestation of innocence to their supervisors had little bearing on the issue of probable cause and, in fact, they even admitted to their supervisors at the time of the investigation that the bare facts put them in a bad light. While several print shop employees testified favorably to plaintiffs at trial, those witnesses did not come forward with exculpatory information until after the arrests. As mentioned earlier, the critical point in a probable cause determination is what information was available prior to the arrest. The fact that plaintiffs ascribed bad motives to defendants does not alter this conclusion. Malice or motive are irrelevant with respect to false imprisonment and the worst of motives will not make a lawful imprisonment wrongful (59 NY Jur 2d, False Imprisonment and Malicious Prosecution, § 13, at 275; § 69, at 332). Although malice is an important element of malicious prosecution, lack of probable cause may not be inferred from malice *(see,* 59 NY Jur 2d, False Imprisonment and Malicious Prosecution, § 71, at 334). Speculation as to the result of criminal trials that did not take place may not be used to determine the issue of probable cause.

■ Regarding the remaining cause of action for abuse of process, we conclude that this claim should have also been dismissed by Supreme Court, although for different reasons. As aptly noted by defendants, the gist of an action for abuse of process is not for its issuance but for the the improper use of process *after* it is issued by the court *(see, Curiano v Suozzi,* 63 NY2d 113, 117; *Drago v Buonagurio,* 61 AD2d 282, 285, *revd on other grounds* 46 NY2d 778; 86 NY Jur 2d, Process and Papers, § 134, at 381; Prosser and Keeton, Torts § 121, at 897-898 [5th ed]). Here, it appears from the record that the only action taken by defendants following the arrests was the grievance proceeding requested by plaintiffs. Plaintiffs never appeared in Town Court. In any event, even if most of the elements of the claim had been stated in the complaint, this cause of action should have been dismissed for failure of plaintiffs to plead or prove at trial actual or special damages *(see, Board of Educ. v Farmingdale Classroom Teachers Assn.,* 38 NY2d 397, 405; *Weisman v Weisman,* 108 AD2d 852, 853; *Key Bank v Lake Placid Co.,* 103 AD2d 19, 26, *appeal dismissed* 64 NY2d 644).

Due to our resolution of the foregoing issues, the remainder of defendants' arguments have been rendered academic.

KANE, J. P., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, without costs, and complaint dismissed.

Appeal from order dismissed, as academic, without costs.