OPINION OF THE COURT
Chief Judge Wachtler.
This case comes to us on appeal, by leave of this Court, from an order of the Appellate Division which reversed, on the law, *526 a judgment entered upon a jury verdict awarding damages to plaintiffs for false arrest, malicious prosecution and abuse of process. The Appellate Division dismissed the complaint, concluding that plaintiffs had failed to establish necessary elements of each of the three causes of action. We disagree with the Appellate Division’s conclusions and accordingly reverse.
To set aside a jury verdict and enter judgment as a matter of law, "[i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial” (Cohen v Hallmark Cards, 45 NY2d 493, 499). Because the jury returned a verdict in favor of plaintiffs, we must evaluate the evidence in the record in the light most favorable to the plaintiffs.
At the relevant times, plaintiffs were both employees of defendant Cornell University. Plaintiff John Cleveland had worked as a mail courier for over 20 years and had an unblemished employment record. Plaintiff Thomas Parkin had worked for more than eight years as a delivery driver for the university’s print shop with one minor reprimand in his record. Both Parkin and Cleveland were visible and vocal members of the local United Auto Workers Union which, at the time these events occurred, was in the midst of long and bitter negotiations with the university administration. This action was instituted after plaintiffs were arrested and charged by university officials with stealing four boxes of envelopes from the print shop. Plaintiffs claimed that the criminal charges were brought to punish them for their union activities.
The envelopes were delivered at Parkin’s direction to the building in which Cleveland worked and left with Cleveland’s supervisor with instructions to give them to Cleveland. The supervisor did so but, apparently concerned that the envelopes were not accompanied by delivery slips, he also notified his supervisor, defendant John Cerio. Cerio, in turn, notified the print shop manager, who stated that he had not authorized the delivery. When confronted by Cerio, Cleveland explained that he had simply requested samples of envelopes from the print shop on behalf of an Alumni House employee whom he had encountered on his mail route. He had relayed the request to Parkin and some other print shop employees, who had mistakenly sent cartons of envelopes instead of individual samples.
*527 At the time, Cerio removed two of the four boxes from Cleveland’s mail truck. Cleveland later testified that Cerio had assented to his request to retain the other two boxes to show the Alumni House employee. Cerio, on the other hand, claimed that he allowed Cleveland to take a few individual envelopes from the boxes that he had seized, but that he was not then aware of the other two boxes and that Cleveland had concealed their existence.
When Parkin and the other print shop employees involved were questioned by the print shop manager, they confirmed Cleveland’s story that he had requested samples of envelopes on behalf of a woman who worked at Alumni House.
University officials discussed the matter and ordered an investigation by the university’s public safety department. The officer assigned to the investigation spent approximately 15 to 20 minutes interviewing four Alumni House employees to determine whether someone in that office had requested envelope samples and an additional two hours reviewing Cerio’s written statements and meeting with defendant Ronald Mathews, the director of support services. That was apparently the extent of the investigation.
Two weeks later, just two days after Parkin and Cleveland participated in a major job action, including picketing, a "dine-in” and a rally at which Parkin spoke, plaintiffs were separately arrested, taken to the public safety offices, and confronted by Mathews. Mathews told them that if they did not resign, they would be fired and prosecuted for the theft of the envelopes. Plaintiffs refused to resign. They were then fired, fingerprinted, photographed and given appearance tickets to appear in Town Court on September 2. Both were charged with petit larceny; Cleveland was additionally charged with possession of stolen property. They appeared in Town Court on the scheduled date and again a week later. Both appearances resulted in adjournment.
Following their discharge from employment, Parkin and Cleveland filed grievances through their union. By decision dated September 3, an associate university vice-president sustained their grievances to the extent of withdrawing the termination letters and reinstating them both with back pay, but ordered that written warnings be placed in both of their personnel files. On September 30, the criminal charges were dismissed at the instance of the university.
Thereafter, plaintiffs commenced this action asserting, inso *528 far as relevant here,[1] causes of action for false arrest, malicious prosecution, and abuse of process. The central issue at trial was whether, at the time the charges were brought against plaintiffs, defendants had probable cause to believe that the crimes charged had been committed by plaintiffs. Defendants contended that this issue presented a question of law to be determined by the court. The trial court ruled, however, that the question should be determined by the jury.
Much of the testimony in this regard focused on the delivery slip system used by the university for routing materials throughout the campus. For their part, plaintiffs and witnesses testifying on their behalf claimed that deliveries without slips were commonplace and that, in fact, delivery slips were infrequently used by the print shop in connection with supplies like envelopes, as distinguished from printing work ordered by customers. These witnesses also testified that they were not aware of any employee being disciplined for failing to use delivery slips. Defendants, on the other hand, claimed that it was highly unusual for materials to be delivered without documentation.
At the close of plaintiffs’ evidence and again after the completion of all evidence, defendants moved for directed verdicts dismissing the complaint. These motions were denied and the jury, as noted, found in favor of plaintiffs on the three relevant causes of action. The jury awarded each plaintiff $100,000 in compensatory damages and $100,000 in punitive damages. In response to written interrogatories, the jury specifically found that defendants lacked reasonable cause to believe that plaintiffs had committed a crime, that defendants acted maliciously in initiating the prosecution and that defendants used the legal process for a purpose other than that for which it was intended. It is clear that the jury believed, in the words of the court’s instruction, that the charges were brought by defendants "for the purpose of interference with and obstruction of legitimate union activities, to punish union members’ activities”.
On defendants’ appeal, the Appellate Division reversed and dismissed the complaint (164 AD2d 240). That court concluded that no material issues of fact were in dispute on the question of probable cause and that the issue, therefore, should not have been submitted to the jury. Instead, the court held, *529 probable cause was established as a. matter of law and a directed verdict in defendants’ favor should have been ordered at the close of plaintiffs’ case with respect to the false arrest and malicious prosecution claims. As for the abuse of process claim, the court held that plaintiffs failed to plead or prove actual or special damages and additionally failed to show improper use of process after its issuance.
We conclude first that the Appellate Division erred in dismissing plaintiffs’ causes of action for false arrest and malicious prosecution. In this context, the issue of probable cause is a question of law to be decided by the court only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts (Veras v Truth Verification Corp., 87 AD2d 381, 384, affd 57 NY2d 947). Where there is "conflicting evidence, from which reasonable persons might draw different inferences * * * the question [is] for the jury” (id., at 384).
In the present case, the evidence at trial gave rise to a number of factual disputes bearing on the issue of probable cause, notably the question whether and to what degree departures from the university’s delivery slip system were commonplace and, consequently, what inference should reasonably have been drawn by defendants from plaintiff Cleveland’s possession of four boxes of university-owned envelopes without the appropriate documentation.
Also relevant to the issue and disputed at trial was whether, after two of the boxes were retrieved by Cerio, Cleveland had concealed the other two boxes or had, instead, retained them with Cerio’s permission. Both of these factual disputes bear directly on whether reasonable persons would have concluded from the circumstances known to defendants that plaintiffs harbored the intent required to establish petit larceny — the "intent to deprive another of property or to appropriate the same to himself or to a third person” (Penal Law § 155.05 [1]) —or whether instead, reasonable persons would have concluded that plaintiffs, as they claimed, intended to return the envelopes after accommodating another university employee’s unremarkable request to view samples.
It is noteworthy in this regard that the public safety officer assigned to the case explained his less than diligent efforts to investigate the plaintiffs’ story by stating his erroneous belief that the plaintiffs’ intentions were irrelevant. In his view, plaintiffs’ removal of the envelopes from the print shop with *530 out authorization constituted larceny regardless of their innocent intentions.
Given these factual disputes and the variety of inferences that could be drawn from them, the issue of probable cause could not be resolved as a matter of law and Supreme Court properly submitted the question to the jury.
We also conclude that the Appellate Division erred in dismissing plaintiffs’ cause of action for abuse of process. We note first our disagreement with that court’s conclusion that plaintiffs failed to plead and prove actual or special damages. To the contrary, both plaintiffs testified that they had incurred legal expenses in connection with their defense of the criminal charges brought against them.
The Appellate Division’s alternative holding that abuse of process requires some improper conduct after issuance of process finds support in the language of several of our cases.[2] We have noted several times that "[t]he gist of the action for abuse of process lies in the improper use of process after it is issued” (Dean v Kochendorfer, 237 NY 384, 390; see, Curiano v Suozzi, 63 NY2d 113, 117; Hauser v Bartow, 273 NY 370, 373). It is not clear, however, whether this language should be viewed as a strict and limiting definition of the tort or whether it is merely illustrative.
In none of the cases from this Court cited by the Appellate Division or by defendants was an otherwise viable abuse of process claim defeated simply because no improper conduct occurred after issuance of the process. Thus, nothing in this Court’s holdings would seem to preclude an abuse of process claim based on the issuance of the process itself. We leave the question open for the present, however, because we conclude that this issue was not properly before the Appellate Division and could not serve as a predicate for dismissing the abuse of process cause of action.
Defendants never claimed at trial or in their posttrial motion that plaintiffs’ proof was deficient because it failed to establish improper conduct after process was issued. Defendants’ motions all focused on the probable cause issue. The court’s instruction on the abuse of process cause of action, which was taken verbatim from defendants’ request to charge, *531 required the jury to find only that defendants brought the charges "for the purpose of interference with and obstruction of legitimate union activities, to punish union members’ activities.” No exception to the charge on abuse of process was registered by defendants.
Under these circumstances, defendants cannot be heard to argue on appeal nor can the Appellate Division or this Court determine that plaintiffs were required to prove more (see, Bichler v Lilly & Co., 55 NY2d 571, 584). Inasmuch as plaintiffs’ evidence was sufficient to support the jury’s verdict under the law as charged, without objection, in this case, there is no basis for dismissing this cause of action (id.).
For these reasons, the Appellate Division erred in dismissing the complaint with respect to all three causes of action, and the case must be remitted for that court to consider issues raised but not previously considered on the appeal to that court.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division for further proceedings in accordance with this opinion.
Judges Simons, Kaye, Alexander, Titone and Bellacosa concur; Judge Hancock, Jr., taking no part.
Order reversed, etc.

. Plaintiffs also asserted causes of action for libel and slander, but the jury found in favor of defendants on those counts.

. In connection with its holding that plaintiffs had not established improper use of process after its issuance, the Appellate Division stated that "[p]laintiffs never appeared in Town Court.” (164 AD2d, at 245.) As noted above, however, plaintiffs testified otherwise.