**Howard M. PRITZKER and Katherine L. Pritzker, individually and in behalf of all others similarly situated, Plaintiffs,**

v.

**CITY OF HUDSON, James L. O'Neil, James J. Dolan, Jr., Paul Kisselbrack, Glenn Martin, and Anthony Moon, as individuals and in their official capacities, Defendants.**

No. 97–CV–1405.

United States District Court, N.D. New York.

May 4, 1999.

David Seth Michaels, Spencertown NY, for plaintiffs.

Bartlett, Pontiff Law Firm, Glens Falls, NY, John J. Poklemba, of counsel, for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

Plaintiffs Howard and Katherine Pritzker commenced this action against defendants pursuant to 42 U.S.C. § 1983 alleging claims of malicious prosecution, excessive force, and denial of due process of law and the right of privacy. By Memorandum – Decision & Order dated October 30, 1998 ("MDO"), familiarity with which is assumed, the Court granted, in part, defendants' motion pursuant to FED.R.CIV.P. 12(b)(6). *Pritzker v. City of Hudson*, 26 F.Supp.2d 433 (N.D.N.Y. 1998). The only remaining claims are Howard Prtizker's ("plaintiff") first cause of action against James L. O'Neil and Paul Kisselbrack (malicious prosecution) and the second cause of action against Anthony Moon (excessive use of force). The parties have completed discovery and defendants now move pursuant to FED.R.CIV.P. 56 seeking dismissal of the Complaint in its entirety.

## I. BACKGROUND

The Court will not now recite the full set of facts previously detailed in the MDO. *Pritzker*, 26 F.Supp.2d at 437–38. The relevant facts pertaining to this motion are as follows and, because this is a motion for summary judgment by the defendants, are presented in the light most favorable to plaintiff. *See Ertman v. United States*, 165 F.3d 204, 206 (2d Cir.1999).

In 1988, plaintiff cooperated with law enforcement officials regarding the investigations of certain members of the City of Hudson Police Department ("HPD"). Plaintiff alleges that certain members of the HPD became aware of his cooperation and instituted a campaign of retaliation against him.

Plaintiff alleges that the campaign of retaliation began on January 10, 1990, when Defendant James L. O'Neil ("O'Neil"), a detective with the HPD, signed two misdemeanor complaints alleging that plaintiff had made false statements violating N.Y.PENAL LAW § 210.45. O'Neil's complaints charged that plaintiff falsely signed a deposition stating that he was the victim of a theft. Plaintiff further alleges that O'Neil obtained a copy of plaintiff's military records "[i]n order to verify Mr. Pritzker's military record, and establish his credibility." *See* Complaint, § 12. The Army Reserve Personnel Center in St. Louis, Missouri, sent a copy of plaintiff's military records to the HPD. The Assistant District Attorney withdrew the false statement charges in April 1990, and the Hudson City Court dismissed the charges on April 17, 1990.

In April 1990, Defendant O'Neil signed a new complaint alleging that Pritzker violated Hudson City Code § 78–31 by turning in a false alarm. This new complaint was based upon the same underlying conduct as the false statement charges and was signed by O'Neil after he learned that the District Attorney's office declined to prosecute the false statement charges. The Hudson City Court dismissed this complaint on September 24, 1990.

Plaintiff asserts that, upon the favorable termination of these charges against him, defendants were required to seal or return plaintiff's military records in accordance with N.Y.CRIM.PRO.LAW § 160.50 ("CPL § 160.50"). In fact, the City Court signed an order requiring defendants to return plaintiff's military records. However, defendants failed to do so.

On February 13, 1996, plaintiff testified as a witness in a tort case in Supreme Court, Columbia County. Plaintiff was re-

tained to investigate the scene of a slip and fall accident. In his testimony, plaintiff stated that he "joined the United States military at the age of 18, volunteered for and was accepted in the Special Forces Green Berets and spent 20 years doing that, four-and-a-half years in Vietnam." Pl. Appendix, at 3. Attorney Eugene Keeler ("Keeler") was present in the courtroom when plaintiff testified about his military career. Keeler subsequently had a discussion with O'Neil and relayed the substance of plaintiff's testimony. Having previously reviewed plaintiff's military records back in 1990, O'Neil believed plaintiff's testimony to be false.

Thus, O'Neil prepared an incident report, reexamined plaintiff's military records, requested a copy of the transcript of plaintiff's trial testimony, and began a preliminary investigation. O'Neil concluded that a felony had been committed and that further investigation was warranted. After three weeks of preliminary investigation, O'Neil turned the matter over to the detective division with instructions that they "[s]hould follow up on it [and that] [t]here were still a lot of open leads on it." The detective division assigned the case to Defendant Paul Kisselbrack ("Kisselbrack").

Kisselbrack pursued the investigation, including obtaining a copy of plaintiff's trial transcript and having plaintiff's military records reviewed by an Army Major in Latham, New York (the "Major"). According to Kisselbrack, the Major advised that there was no way that plaintiff was in the Green Berets or that he served more than ten months in Vietnam. On January 8, 1997, Kisselbrack signed a felony complaint charging plaintiff with perjury in the first degree in violation of N.Y.PENAL LAW § 210.15. The complaint specifically charged that:

> [On February 13, 1996] at the Columbia County Courthouse in the City of Hudson, N.Y. [plaintiff] did testify under oath as a witness in a civil trial, that he had been in the Special Forces Green Beret and had served 4½ years of active duty in Vietnam. Military records show that the defendant did NOT serve any time in the Green Beret Special Forces and in fact spent ONLY 10 MONTHS in Vietnam. (Emphasis in original).

Kisselbrack then presented the felony complaint to a Hudson City Court judge. Subsequently, Kisselbrack had several meetings with the detective sergeant and the chief of police regarding the appropriate way to pursue the case against plaintiff. At least one of the discussions pertained to the information Kisselbrack received from the Major. Kisselbrack ultimately prepared a warrant for plaintiff's arrest, which was signed by a Hudson City Court judge on January 24, 1997.

The detective sergeant apparently instructed Kisselbrack to hold the warrant because defendants were attempting to obtain further verification of plaintiff's military records from the Army Reserve Personnel Center in St. Louis. Kisselbrack ultimately was told to execute the warrant. Accordingly, Kisselbrack telephoned plaintiff's attorney and advised him that plaintiff should present himself at the Hudson City Police Department for arrest.

Plaintiff voluntarily surrendered at the HPD on March 24, 1997. Plaintiff claims that, at that time, he informed Defendant Anthony Moon ("Moon"), an officer with the HPD, that he had sustained injuries to his wrists. Moon placed a handcuff on plaintiff's left wrist which was attached at the other end to a bench in the holding cell. Plaintiff alleges that Moon placed the handcuff on too tightly causing him serious and permanent injury.

The perjury charge against plaintiff was presented to a Grand Jury which, on July 1, 1997, returned a "no bill."

Plaintiff commenced this action alleging malicious prosecution (first cause of action), excessive use of force (second cause of action), and violation of due process and the right of privacy (third and fifth causes of action). In the October 30, 1998 MDO,

this Court granted defendant's motion to dismiss all causes of action except the malicious prosecution claims against O'Neil and Kisselbrack and the excessive force claim against Moon. Defendants now move pursuant to FED.R.CIV.P. 56 seeking dismissal of the remaining causes of action in the Complaint.

## II. DISCUSSION

### A. Standard Under Rule 56

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, judgment may be entered in favor of the moving party if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all facts must be construed in favor of the nonmoving party. *Id.; Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995). Where the moving party has supported the motion by affidavits and/or documentary evidence, the nonmovant "may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided [ ] rule [56], must set forth specific facts showing that there is a genuine issue [of material fact] for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.P. 56(e); *BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996).

With this standard in mind, the Court will now address defendants' motion for summary judgment.

### B. Malicious Prosecution

In the October MDO, the Court held that the Complaint sufficiently stated a cause of action for malicious prosecution against O'Neill and Kisselbrack because: (1) they played an active role in the initiation and continuation of criminal proceedings against plaintiff; (2) the perjury charge terminated in plaintiff's favor; (3) there were insufficient facts before the Court regarding the arrest and the issuance of the arrest warrant to determine whether defendants acted with probable cause or whether defendants are entitled to a presumption of probable cause; and (4) the allegations that the defendants retaliated against plaintiff for his cooperation in the investigation of certain members of the HPD and that O'Neil instituted several criminal. charges against plaintiff, all of which were dismissed before trial, gave rise to inferences that the perjury charge was motivated out of wrong or improper motives.

Having completed discovery, defendants now move to dismiss this cause of action claiming that they acted with probable cause in filing the felony perjury complaint against plaintiff. Defendants assert that the following conduct demonstrates that they acted with probable cause: O'Neil learned from Keeler that plaintiff testified that he served in the Special Forces, Green Berets and spent four and one-half years in Vietnam; O'Neil recollected from his prior review of plaintiff's military records that plaintiff's testimony, as recounted by Keeler, was untruthful; defendants reviewed plaintiff's trial testimony and compared it with the military records; defendants had plaintiff's military records reviewed by a Major from the military who advised that plaintiff could not have been in the Green Berets and could not have served more than ten months in Vietnam; and, based upon this information, they filed a felony complaint charging plaintiff with a violation of N.Y.PENAL LAW 210.15 and obtained a warrant for his arrest.

Plaintiff responds that defendants did not act with probable cause because there are no facts to lead a reasonable person to believe that plaintiff's trial testimony was false or material. Plaintiff specifically argues that defendants have failed to establish that the military records they received

in 1990 were either complete or contradicted plaintiff's testimony; defendants no longer possess the military records and, thus, are unable to demonstrate what records they had in their possession when they filed the felony complaint or that such records contradict plaintiff's prior testimony; O'Neil was not qualified to read the military records or determine whether they were complete; Kisselbrack was unable to determine on personal knowledge whether the military records contradicted plaintiff's prior trial testimony; the purported statements by the Major that the records were complete and that plaintiff could not have been in the Green Berets and could not have served longer than ten months in Vietnam are hearsay; defendants believed their information regarding the military records to be inadequate, as demonstrated by Kisselbrack being advised to hold the arrest warrant pending further verification of the military records; the felony complaint did not reveal to the City Court judge that the examination of the military records was performed by an unnamed third party; plaintiff has proof that he was in Vietnam during a period of time when his military records say he was not; and, finally, that his testimony in the tort litigation was not material because information about his military career is irrelevant to his investigation of the site of the accident.

■ Under New York law, to establish a claim for malicious prosecution, plaintiff must demonstrate: (1) the initiation of criminal proceedings against him by defendants; (2) termination of such proceedings in plaintiff's favor; (3) lack of probable cause; and (4) actual malice. *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983); *Engel v. CBS, Inc.*, 145 F.3d 499, 502 (2d Cir.1998) (citing *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.1996)).

The Court previously determined that O'Neil and Kisselbrack initiated criminal proceedings against plaintiff and that those criminal proceedings terminated in plaintiff's favor, thereby satisfying the first and second prongs. *See Pritzker*, 26 F.Supp.2d at 442. The pivotal question is whether defendants acted with probable cause in initiating the perjury charge against plaintiff.

■ Under New York law, "the issue of probable cause is a question of law to be decided by the court only where there is no real dispute as to the facts or the proper inferences to be drawn from such facts.... Where there is 'conflicting evidence, from which reasonable persons might draw different inferences ... the question [is] for the jury.'" *Parkin v. Cornell University*, 78 N.Y.2d 523, 529, 577 N.Y.S.2d 227, 583 N.E.2d 939 (1991) (quoting *Veras v. Truth Verification Corp.*, 87 A.D.2d 381, 384, 451 N.Y.S.2d 761 (1st Dep't), *aff'd*, 57 N.Y.2d 947, 457 N.Y.S.2d 241, 443 N.E.2d 489 (1982)).

In the present case, the material facts are not in dispute. The parties agree that "defendant O'Neil was advised by [ ] Keeler that plaintiff testified at a civil trial that he was a member of the special forces/green berets, and had served in Vietnam for four and one half years," (see Defendants' 7.1(a)(3) stmnt., at ¶ 10; Pl's 7.1(a)(3) stmnt., at ¶ 18); O'Neil reviewed plaintiff's military records and otherwise conducted a preliminary investigation; Kisselbrack had the military records reviewed by the Major; there is no military documentation indicating that plaintiff served in the Special Forces, Green Berets or that he spent more than ten months in Vietnam (see Pritzker Dep., at 22–23); and that, based upon all of the above, Kisselbrack signed a felony complaint charging plaintiff with perjury in the first degree in violation of N.Y.PENAL LAW § 210.15. Accordingly, the issue of probable cause is one for the Court to decide. *Id.*

■ The existence of probable cause depends on whether "the knowledge of facts, actual or apparent, [are] strong enough to justify a reasonable man in the belief that he has lawful grounds for prose-

cuting the [plaintiff for perjury in the first degree]." *Rounseville v. Zahl,* 13 F.3d 625, 629 (2d Cir.1994) (citing *Pandolfo v. U.A. Cable Systems of Watertown,* 171 A.D.2d 1013, 1013, 568 N.Y.S.2d 981 (4th Dep't 1991)); *see also Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983). The elements of perjury in the first degree are: (1) sworn false testimony that is (2) material to the action, proceeding or matter in which it is made. N.Y.PENAL LAW § 210.15.

In the present matter, O'Neil heard from Keeler that plaintiff testified that he was in the Special Forces and that he served four and one half years in Vietnam. Upon hearing this information, O'Neill reviewed plaintiff's military records to compare it with what Keeler had repeated. O'Neil also requested a copy of plaintiff's trial testimony to substantiate what he had heard from Keeler. A few weeks later, O'Neil transferred the file to the detective division, where the case was assigned to Kisselbrack. Kisselbrack took the records to a Major with the Army reserves for review. The Major purportedly advised that he had plaintiff's complete military record, that he reviewed the records in its entirety, and that based upon the records, there was no way that plaintiff either served in the Special Forces or more than ten months in Vietnam. Kisselbrack then signed the felony complaint and presented it to a Hudson City Court judge. Kisselbrack also sought a warrant for plaintiff's arrest. The judge signed the warrant, which was executed almost two months later.

■ These facts, even when viewed in the light most favorable to plaintiff, are sufficient to establish that defendants acted with probable cause in initiating a criminal complaint of perjury in the first degree against plaintiff. Defendants had reviewed plaintiff's military records and concluded that they conflicted with his trial testimony. Defendants confirmed their belief with the Major. Defendants had no reason to doubt the Major's determination

that the military records were complete and that they demonstrated that plaintiff was never in the Special Forces and did not serve more than ten months in Vietnam. Thus, defendants had a reasonable basis for believing that they satisfied the first prong of a perjury charge.

■ The fact that the information received by the Major may constitute hearsay is of no moment because a finding of probable cause may be based on hearsay. *See United States v. Daccarett,* 6 F.3d 37, 56 (2d Cir.1993); FED.R.CRIM.P. 41 ("The finding of probable cause may be based upon hearsay evidence in whole or in part."); *People v. Brown,* 682 N.Y.S.2d 229, 230 (2d Dep't 1998) (same).

Furthermore, the basis for the determination of probable cause was not entirely dependent upon the Major. Defendants had already independently determined that plaintiff's trial testimony conflicted with his military records and that such testimony was material. Defendants sought the Major's advice to confirm their conclusions. Thus, it was not necessary for Kisselbrack to advise the City Court judge that the military records had been reviewed by an Army major. Even if such information should have been presented to the City Court judge in support of the application for the arrest warrant, its omission was harmless. Plaintiff offers no evidence that defendants made a deliberate or reckless misrepresentation in their application. *See Velardi v. Walsh,* 40 F.3d 569, 574 (2d Cir.1994). Moreover, it is unlikely that such information would have been legally relevant to the probable cause determination (if anything, it likely would have lent further support for their application) or that the City Court judge would have declined to issue the arrest warrant if he had been apprised of that information. *See id.*

While defendants' decision to hold the arrest warrant for almost two months prior to executing it does cause the Court pause, it is insufficient to overcome the

above-recited facts. Plaintiff's assertion that defendants held the warrant because they did not earnestly believe the military records to be complete or accurate is conjecture and, thus, insufficient to satisfy his burden on summary judgment.

The fact that plaintiff can now point to some evidence demonstrating that he was in Vietnam during a time when the military records indicate that he was not does not require a different result. These facts were not known to and could not reasonably have been discovered by defendants at the time they initiated the perjury complaint. *See* Pritzker Dep., at 22–23.

Finally, it was reasonable for defendants to believe that plaintiff's testimony in the tort litigation was material to that action. Plaintiff was called to testify about his investigation of an accident scene. At the beginning of his testimony, plaintiff was asked about his military career service to establish his credibility as an investigator. Specifically, plaintiff was attempting to establish that he had experience in the Special Forces, Green Berets making maps. This testimony was elicited to establish the legitimacy of certain drawings plaintiff had made and pictures plaintiff had taken of the accident site. Although plaintiff's testimony about his military career did not go to the heart of his findings as an investigator, it was material to his credibility as an investigator. "To be material, the statement need not prove directly the fact in issue; it is sufficient if it is 'circumstantially material or tends to support and give credit to the witness in respect to the main fact.' " *See People v. Davis,* 53 N.Y.2d 164, 170, 440 N.Y.S.2d 864, 423 N.E.2d 341 (1981) (quoting *Wood v. People,* 59 N.Y. 117, 123). "Thus a statement that reflects on the matter under consideration, even if only as to the witness' credibility is material for purposes of supporting a perjury charge." *Id.* (Internal citations and quotations omitted). Accordingly, it was reasonable for defendants to conclude that plaintiff's testimony about his military career tended to support and give credit to

his forthcoming testimony about the results of his investigation and, therefore, was material.

Simply stated, the facts as known to defendant, actual or apparent, were strong enough to justify a reasonable person in the belief that he or she had lawful grounds for prosecuting plaintiff for perjury in the first degree.

■ Even if defendants acted without probable cause, for the reasons discussed, they would be entitled to qualified immunity because it was objectively reasonable for defendants to believe that their acts did not violate plaintiff's rights. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991).

## C. Excessive Use of Force

■ In the prior MDO, the Court noted that there were several cases prior to March 1997, the time in question, holding that handcuffing a non-threatening individual in the face of a known medical condition violates clearly established constitutional rights. *Pritzker,* 26 F.Supp.2d at 444 (and cases cited). However, there remained a question whether "it was objectively reasonable for Moon to believe that his conduct did not violate [plaintiff's Fourth Amendment] rights." *Id.*

Defendants now move to dismiss plaintiff's excessive force claim contending that plaintiff did not have a clearly established right not to be handcuffed and it was objectively reasonable for Moon to believe that he did not violate plaintiff's rights. In particular, Moon claims that department policy required him to handcuff plaintiff to the bench, he did not place the handcuffs tightly around plaintiff's wrists, plaintiff never complained that the handcuffs were too tight or caused him pain, plaintiff never informed Moon of the nature or severity of the injuries, plaintiff never requested medical attention for his wrists while in custody, and plaintiff's medical records demonstrate that the handcuffs did not cause him injury.

Plaintiff responds that there was a clearly established right not to be handcuffed in the face of a clearly known injury, plaintiff advised Moon of his preexisting injuries to his wrists, plaintiff did not pose a threat because he voluntarily surrendered in response to an arrest warrant for a nonviolent crime, and that Moon, nonetheless, placed the handcuffs tightly on plaintiff's wrist.

Freedom from the use of excessive force is a clearly established right invoking the Fourth Amendment "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989); *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990). While the Second Circuit has stated that it is not always reasonable to use handcuffs in effectuating an arrest, "[n]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." *Soares v. State of Connecticut,* 8 F.3d 917, 921 (2d Cir.1993). Other circuits have held that, under certain circumstances, it would be inappropriate to use handcuffs in the face of a known injury. *See Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993); *Palmer v. Sanderson,* 9 F.3d 1433, 1436 (9th Cir.1993); *see also Soares,* 8 F.3d at 921. Regardless of whether there was a clearly established right not to be handcuffed, under the facts and circumstances of this case it was reasonable for Moon to believe that he did not violate plaintiff's rights.

Although Moon was aware that plaintiff had a preexisting injury to his wrists, plaintiff testified at deposition that he never informed Moon of the severity of that injury, he never complained to Moon that the handcuffs were hurting him, he did not exhibit any signs of pain or trauma, and he never requested medical treatment. Pritzker Dep., at 55–59; *see Owens v. Colburn,* 860 F.Supp. 966, 972 (N.D.N.Y.1994), *aff'd,* 60 F.3d 812 (2d Cir.1995). Thus, there was no reason for Moon to believe that he was using excessive force in placing the handcuff on plaintiff's wrist. *Id.* Furthermore, plaintiff's testimony reveals that the handcuffs were not placed so tightly around his wrists as to prevent him from being able to move his hands. *See* Pritzker Dep., at p. 55–57. In fact, there was a gap between his wrists and the handcuffs. *Id.,* at p. 57. Accordingly, Moon is entitled to qualified immunity.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED in its entirety.

**IT IS SO ORDERED**